# IN THE UNITED STATES COURT
# OF APPEALS FOR THE FIFTH CIRCUIT

JANE DOE

                        Plaintiff – Appellant,

v.

KERRVILLE INDEPENDENT SCHOOL DISTRICT,

                       Defendant – Appellee.

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## APPELLANT JANE DOE'S REPLY BRIEF

Heather Lynn Long
**HEATHER LONG LAW PC**
4310 N Central Expressway
Dallas, Texas 75206
Phone: 214-699-5994
heather@heatherlonglaw.com

Amos L. Barton
**THE CARLSON LAW FIRM, P.C**.
301 Junction Highway, Suite 100
Kerrville, Texas 78028
Phone: 830-257-7575
amos@carlsonattorneys.com

Martin Cirkiel
**CIRKIEL & ASSOCIATES, P.C.**
1901 E Palm Valley Boulevard
Round Rock, Texas 78664
Phone: 512-244-6658
marty@cikielaw.com

**ATTORNEYS FOR APPELLANT**

# TABLE OF CONTENTS

**TABLE OF CONTENTS**.................................................................................................... i

**TABLE OF AUTHORITIES**....................................................................................... ii

**ARGUMENT**.................................................................................................................1

    I.   Jane's claim for teacher-student sexual abuse by Chatagnier should have been decided by the jury. ...............................................................1

        A.    KISD knew Jane was at a substantial risk of sexual abuse..............1

        B.    Deliberate indifference must be determined based on the total picture...................................................................................................8

    II.  Jane presented legally sufficient evidence of KISD's municipal liability for its "no supervision" policy for preventing educator sexual misconduct........................................................................................12

    III.  The JMOL proceedings were fundamentally unfair. ........................20

**CONCLUSION** ..........................................................................................................21

**CERTIFICATE OF SERVICE** .............................................................................23

**CERTIFICATE OF COMPLIANCE** ...................................................................23

# TABLE OF AUTHORITIES

## Cases

*A.B. & C.B. v. Tredyffrin/Easttown Sch. Dist.,*
No. 17-2581, 2018 U.S. Dist. LEXIS 97863 (E.D. Pa. Jun. 18, 2018) ...................... 1

*Allen v. Hays,*
63 F.4th 307 (5th Cir. 2023) ................................................................ 13

*Bostic v. Smyrna Sch. Dist.,*
418 F.3d 355 (3d Cir. 2005) ................................................................ 1

*City of Canton v. Harris,*
489 U.S. 378 (1989) ........................................................................ 13

*Covington v. City of Madisonville,*
812 F. App'x 219 (5th Cir. 2020) .......................................................... 13

*Crandell v. New York College of Osteopathic Med.,*
87 F. Supp. 2d 304 (S.D.N.Y. 2000) ........................................................ 10

*Davis v. Monroe County Bd. of Educ.,*
526 U.S. 629 (1999) ........................................................................ 9

*Dawn L. v. Greater Johnstown Sch. Dist.,*
586 F.Supp.2d 332 (W.D. Pa. 2008) ........................................................ 1

*Doe ex rel. Doe v. Dall. Indep. Sch. Dist.,*
220 F.3d 380 (5th Cir. 2000) .............................................................. 4

*Gant ex rel. Gant v. Wallingford Bd. of Educ.,*
195 F.3d 134 (2d Cir. 1999) ............................................................... 10

*Monell v. New York City Dept. of Social Servs.,*
436 U.S. 658 (1978) ........................................................................ 12

*Oncale v. Sundowner Offshore Servs.,*
523 U.S. 75 (1998) ......................................................................... 11

*Reeves v. Sanderson Plumbing Prods.,*
530 U.S. 133 (2000) ........................................................................ 3

*Roe v. Cypress-Fairbanks Indep. Sch. Dist.,*
53 F4.th 334 (5th Cir. 2022) ............................................................. 1, 2

*Sneed v. Austin Indep. Sch. Dist.,*
490 F. Supp. 3d 1069 (W.D. Tex. 2020) .................................................... 9

*Williams v. Bd. Regents Univ. Sys. Ga.,*
    477 F.3d 1282 (11th Cir. 2007) ............................................................... 9
*Zeno v. Pine Plains Cent. Sch. Dist.,*
    No. 07 Civ. 6508, 2009 U.S. Dist. LEXIS 42848 (S.D. N.Y. May 19, 2009) .......... 10

## STATUTES

28 U.S.C. § 1983 .................................................................................. 12
TEX. EDUC. CODE § 11.151 ...................................................................... 15

## RULES

FED. R. APP. P. 32 ................................................................................. 23

**ARGUMENT**

**I.  Jane's claim for teacher-student sexual abuse by Chatagnier should have been decided by the jury.**

This was a case for the jurors who saw the evidence, heard the testimony, and watched the witnesses to decide. There were credibility calls that needed to be made on the element of knowledge and on the element of deliberate indifference. The district court erred when it took the case away from the jury and entered judgment as a matter of law.

**A.  KISD knew Jane was at a substantial risk of sexual abuse.**

A plaintiff can establish actual notice through direct or circumstantial evidence. *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022). A school district must have either actual knowledge: (1) the harassment occurred, (2) is occurring, or (3) that "there is a substantial risk that sex abuse would occur."[1] *Id.* (citations omitted). In the last instance, actual knowledge of a substantial risk, the official must both have the facts

---

[1] "'Actual knowledge requires more than the awareness of a mere possibility of harassment but less than absolute certainty that harassment has occurred.'" *A.B. & C.B. v. Tredyffrin/Easttown Sch. Dist.*, No. 17-2581, 2018 U.S. Dist. LEXIS 97863, at *15–16 (E.D. Pa. Jun. 18, 2018) (quoting *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F.Supp.2d 332, 367 (W.D. Pa. 2008) (citing *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 360 (3d Cir. 2005))).

necessary to know that a substantial risk of serious harm exists and also draw the inference. *See id*.

This case involves actual knowledge based on a known substantial risk of educator sexual abuse. The District argues evidence was insufficient to show its administrators drew the inference Jane was at substantial risk of sexual abuse by Chatagnier under the substantial risk standard for actual knowledge. Appellee's Br. 28. It claims that "it is undisputed that the KISD administrators *did not learn of* sexual abuse of Jane by Chatagnier until June 2020 following the filing of a criminal complaint" against the educator. *Id.* at 27 (citing [ROA.4629](#) (Jane's testimony), [ROA.4516](#) (Balser's testimony), [ROA.4096](#) (Ivy's testimony)) (emphasis added).

KISD appears to have conflated actual knowledge based on knowledge abuse occurred or is occurring (the first two categories above) with knowledge of a substantial risk of abuse (the third category above). *Id.* at 27. None of the testimony cited addresses substantial risk or whether the requisite inference was made. If KISD had conclusive proof that its employees denied drawing the inference that Jane was at a substantial risk

of sexual abuse by Chatagnier, it would have pointed that evidence out.

Testimony by Jane that she did not tell anyone about the abuse while at Tivy is not proof of her risk or the inferences KISD's administrators drew based on the facts known to them at the time.[2] *See* ROA.4629. Balser's testimony admitting she did not tell Jane's parents about the school's lead counselor catching the math teacher sitting in his chair with their daughter behind his desk on her knees is not conclusive proof the principal did not make the requisite inference about substantial risk of abuse.[3] *See* ROA.4516. Ivy's testimony about when he learned Chatagnier was reported to the police for abusing Jane does not prove that he did not make the requisite

---

[2] Even if there were such self-serving denials in evidence, the standard of review applicable to motions for judgment as a matter of law requires. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000) ("Thus, although the court should review the **record as a whole**, it **must disregard** all evidence favorable to the moving party that the **jury is not required to believe**.") (citations omitted, emphasis added).

[3] That admission, coming from the same principal who got caught with two sexually abusive teachers in her school less than six months earlier, one of which abused Jane, could reasonably be viewed as evidence that the inference was drawn by Balser. *See* ROA.4281, ROA.4298-4305, ROA.5036, ROA.4856-4858, ROA.7452-7475, ROA.7606-7612. The September 2017 reports of Edwards and the Tivy librarian's abuse attracted significant attention from District leadership and the media at a time when Balser was in her first year as a principal. *Id.* Reasonable jurors considering those circumstances, as well as Balser's recent experience investigating those abusers, could conclude Balser kept information that indicated a second educator engaging in a sexual relationship with Jane from Jane's parents.

inference about substantial risk of abuse either. *See* ROA.4096.

Judgment as a matter of law on actual knowledge was improper because Jane produced evidence the District's administrators had the facts necessary to know a substantial risk of sexual abuse existed and drew the inference from those facts that Jane was at substantial risk of educator sexual abuse. Actual notice is a question for the jury as it involves a fact-specific inquiry and can only be decided as a matter of law when facts are not in dispute. *See Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384–85 (5th Cir. 2000) (citations omitted). The facts are in dispute in this case, which puts the issue of witness credibility front and center.

Experts in educator sexual misconduct for both parties testified prior victims of educator sexual misconduct have a significantly increased risk of revictimization. ROA.4387-4389, ROA.4191-4193. KISD Assistant Superintendent Ivy, Tivy High School Principal Balser, and Tivy High School Assistant Principal Cook each confirmed that they were aware of the risk to Jane at the time of the underlying events. ROA.4011, ROA.4771-4772, ROA.4498.

Assistant Superintendent Ivy, applying his experience as head of human resources, agreed that the fact Jane had been the victim of educator sexual misconduct by Edwards enhanced her risk of revictimization. ROA.4011:15-18. He admitted repeated boundary crossings by Chatagnier added to Jane's experience as a prior victim further enhanced her risk of subsequent educator sexual misconduct. ROA.4011:19-22. According to Assistant Superintendent Ivy, continued boundary crossing behaviors create risk for ESM and "it becomes more substantial as those boundaries become more." ROA.3991:18-3992:3.

Chatagnier started crossing professional boundaries with Jane sometime in November 2017. ROA.4856-4858, ROA.4892-4893. Other school administrators, teachers, and students noticed the special attention Chatagnier gave Jane, including frequent hall passes to stay late with him during his conference period and allowing her in his classroom during other non-assigned class periods. *See e.g.*, ROA.4856-4858, ROA.4892-4893, ROA.4024-4041, ROA.3981-3983. Repeated reports of his behavior were submitted to both Balser and Ivy between November 2017 and April 2018.

When the first reports came to Principal Balser in November or December 2017, she and Assistant Superintendent Wade Ivy were less than two months out from investigating two other incidents of educator sexual misconduct on the part of employees at Tivy High School. *See* ROA.7452-7475, ROA.4281, ROA.4298-4305, ROA.5036, ROA.4312-4314. Tivy's JROTC instructor's sexual abuse of Jane was the subject of one of those investigations and resulted in finding of sexual abuse. ROA.7452-7475.

Over the next six months, Ivy and Balser received reports of (and in some instances witnessed first-hand) Chatagnier exhibiting the same and/or similar behaviors that were critical indicators of educator sexual misconduct in their Edwards investigation. ROA.4024-4041, ROA.3981-3983, ROA.4473-4478, ROA.4485-4515. From February to April 2018, Chatagnier repeatedly and blatantly ignored instructions to keep a professional distance from Jane. *See* ROA.4782-4784, ROA.4861-4862, ROA.4469-4478, ROA.4776-4780.

For instance, administrators told Chatagnier to keep Jane out of his classroom at unscheduled times or face formal discipline in late February 20, 2018. ROA.4469-4478, ROA.4776-4780. Days later, on March 2nd, Tivy's lead

counselor discovered Chatagnier sitting in his chair with Jane kneeling on her knees behind his desk so engrossed in conversation that neither noticed her standing in the doorway. ROA.4583-4584. The incident was reported to Balser (who informed Ivy) and Cook. *Id.*

The insubordination continued despite a written directive being put in place. *See id.* Finally, on April 27, 2018, a disinterested and trusted student informed Balser that she had seen Jane say "we hooked up" about Chatagnier. ROA.4875-4885, ROA.4897-4898, ROA.5082, ROA.4782-4784, ROA.4780-4792, ROA.4890-4891. Administrators observed Chatagnier and Janee wearing matching shirts from an out-of-town Volkswagen event the same day. *Id*. Balser reported the "hooked up" outcry to Ivy who admitted the phrase "hooked up" carries a sexual connotation. ROA.4040-4041. The District allowed him to resign in lieu of termination three days later.[4]

Assistant Principal Chris Cook admitted to actual knowledge in front of the jury. Cook testified:

---

[4] During deposition, KISD's own expert <u>agreed</u> that at the time of resignation, "KISD should have learned of *zero* more boundary crossing incidents before they suspected sexual abuse?" ROA.4393-4395, ROA.5083, ROA.4448-4450. He tried to change his answer in front of the jury when confronted with his prior testimony. *Id.*

Q. At the time regarding the "hooked up" statement coming out and discussions with Principal Balser and Wade Ivy, did you, at a minimum, know that there was an inappropriate, unprofessional, and were you very concerned that it could be more than that relationship between the math teacher and [Jane]?

A. Yes, because that had been clearly outlined by Ms. Balser in a written directive to Mr. Chatagnier that he was not to be with a student individually.

Q. And at that point you knew that there was a serious need to look at whether this incident was a romantic or sexual relationship, correct?

A. Yes.

ROA.4782:3-4784:8.

Applying the standard of review as intended, shows Jane provided the jury with legally sufficient evidence from which reasonable jurors to conclude KISD had the necessary facts to conclude Jane was at a substantial risk of sexual abuse by Chatagnier and that its administrators actually drew the inference of substantial risk from those facts.

## B. Deliberate indifference must be determined based on the total picture.

Once a school district is on notice of a problem, the school district has a legal duty to take reasonable steps to eliminate the sexually hostile

environment. *See Sneed v. Austin Indep. Sch. Dist.*, 490 F. Supp. 3d 1069, 1086–87 (W.D. Tex. 2020). Though a high bar, deliberate indifference is a fact-intensive inquiry. *See id.* (citations omitted). Both doing nothing in response to known discrimination and acting in a way that is clearly unreasonable **in light of the known circumstances** qualify as deliberate indifference. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999). A plaintiff can also establish deliberate indifference when a Title IX recipient's deliberate indifference to initial discrimination subjected the plaintiff to additional discrimination. *See Williams v. Bd. Regents Univ. Sys. Ga.*, 477 F.3d 1282, 1296 (11th Cir. 2007).

The facts and circumstances relevant to deliberate indifference in this case began in September 2017 and proceeded through May 2018. As set out in Jane's opening brief, the jury heard evidence about numerous incidents that took place over that time and about how those incidents were interrelated. KISD argued that it was not deliberately indifferent because of its responses specific to each incident. *See* Appellee's Br. 30–33. The district court did the same in its order. ROA.3717-3719. That disaggregation analysis

is inconsistent with the standard for deliberate indifference set out in *Davis*.

Deliberate indifference to discrimination can be shown by a defendant's actions or inactions in light of known circumstances. *See Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140 (2d Cir. 1999). As one court has explained why that is the case in situations where the allegations go beyond one discrete incident of harassment:

> In evaluating hostile environment claims, courts have adopted a "totality of the circumstances" approach that rejects disaggregation of the allegations and requires only that the alleged incidents cumulatively have resulted in the creation of a hostile environment. In consequence, defendants' effort to disaggregate and thereby defeat plaintiff's allegations is contrary to law.

*Zeno v. Pine Plains Cent. Sch. Dist.*, No. 07 Civ. 6508, 2009 U.S. Dist. LEXIS 42848, at *4–6 (S.D. N.Y. May 19, 2009) (quoting *Crandell v. New York College of Osteopathic Med.*, 87 F. Supp. 2d 304, 319 (S.D.N.Y. 2000)). It further explained, that "in light of repeated incidents documented by Defendant, a question of fact remains as the reasonableness of its comprehensive response to Plaintiff's situation." *Id.* at *7 (citations omitted).

The Supreme Court has recognized that determinations calling for

courts to look at the known or surrounding circumstances require comprehensive appreciation of a number of factors. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81–82 (1998) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.").

The District officials in this case witnessed Chatagnier mirroring the same behaviors those same officials witnessed when investigating Edwards for his sexual abuse of Jane. They knew the behaviors were dangerous and hid the information that they found from Jane's parents because officials did not want the parents to use the information against the District. KISD knew Jane was at a substantial risk for revictimization and watched clearly predatory behaviors go on for months. It took a witness reporting seeing

Jane say "we hooked up" in reference to Chatagnier while the pair wore matching shirts for the District to force the teacher's resignation.

Viewing the facts in this case, as set forth fully in Jane's opening brief, without disaggregation makes the deliberate indifference of KISD readily apparent.

**II.  Jane presented legally sufficient evidence of KISD's municipal liability for its "no supervision" policy for preventing educator sexual misconduct.**

The district court erroneously entered judgment as a matter of law on Jane's municipal liability claim for failure to supervise under 28 U.S.C. § 1983. Holding a municipality liable under § 1983 requires the plaintiff to show that the constitutional violation (plaintiff's injury) was caused by a **municipal policy** *or* **custom**. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).

Jane originally sued KISD under two different municipal theories of liability— failure to train and failure to supervise. Only the failure to supervise claim proceeded to trial. Proving that claim required evidence the municipality was aware of impending rights violation but was deliberately

indifferent to it. *Allen v. Hays*, <u>63 F.4th 307, 319</u> (5th Cir. 2023) (citing *City of Canton v. Harris*, <u>489 U.S. 378, 391</u> (1989)). Failure to supervise and failure to train fall into a category of claims for municipal failures. However, the two are separate and distinct causes of action predicated on separate and distinct theories of liability.

Supervision is an ongoing responsibility— municipal employers must continuously supervise their employees to ensure the employees behave in a way that complies with the constitution. *See e.g. Covington v. City of Madisonville*, <u>812 F. App'x 219, 226</u> (5th Cir. 2020). Training, on the other hand, is a discrete responsibility that municipal employers are responsible for before an employee begins a job, at designated intervals, and/or at times triggered by some event. See *City of Canton*, <u>489 U.S. at 391</u>. Stated differently, the two theories of liability are not interchangeable, though there may be some overlap between the facts that support both types of municipal failure claims.

Here, the district court held: (1) Jane failed to adduce evidence KISD's Board was aware that "Chatagnier posed a specific threat to Doe's

constitutional right to bodily integrity" or that it was "on notice that its allegedly defective supervision policies would cause its staff to violate students' rights," and (2) Jane could not produce evidence of deliberate indifference because Dr. Foust's letter established that "after learning of the incident between Doe and Edwards, school officials conducted additional training of staff and stressed the importance of maintaining professional boundaries." ROA.3727.

It reached that conclusion based on a single document in the record, a letter KISD's Superintendent sent to parents/guardians on September 15, 2017— days after reports of Edwards and the librarian sexually abusing students went public. ROA.6122. The letter mentioned training, not supervision. *Id.* It was also released under Dr. Foust's signature, not as a document promulgated by the Board. *See id.* Dr. Foust released a similar letter to parents and guardians that week about the abuse reports in an effort to, essentially, manage public image. ROA.4302-4303, ROA.4312-4317, ROA.5036. The letter was not released to speak on behalf of the Board. *Id.*

Indeed, KISD district-level officials and employees as well as the

experts in this case testified KISD's Board did not have an official policy for the supervision of educator sexual misconduct prevention at the schools in the district which it was statutorily obligated to oversee the management of.[5] KISD's Board was responsible for adopting policies, including policies related to supervision. ROA.3940-3941. According to Dr. Foust, the

When asked about the policies that existed that school year, Assistant Superintendent Ivy gave conflicting testimony about whether the Board even had policy for supervising educator sexual misconduct prevention. *Compare* ROA.3951-3954 (initially stating he was not sure if KISD had a written policy for that ongoing duty) *with* ROA.3954:16-24 (claiming there was a policy on supervising educator sexual misconduct prevention and that the policy was "training requirements" only) *and* ROA.3954-3955 (backtracking again to admit he did not know if there was a policy for

---

[5] Texas Education Code states trustees of independent school districts have the "exclusive power and duty to govern and oversee the management of the public schools of the district." Tᴇх. Eᴅᴜᴄ. Cᴏᴅᴇ § 11.151(b). According to Merriam-Webster, the term "oversee" means "to watch over and direct (an undertaking, a group of workers, etc.) in order to ensure a satisfactory outcome or performance: supervise." *Oversee*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/oversee (last visited 10/29/2024).

supervising the prevention of educator sexual misconduct).

That testimony, when viewed in the light most favorable to Jane, establishes KISD's Board had a "no supervision policy" for educator sexual misconduct prevention before, at the time of, or after Jane's outcry about Edwards. Having two educators reported for sexual misconduct in a very public way put the Board on notice that having no policy for supervision was defective. ROA.4317-4319.

As a result, the inquiry turns to whether the Board had actual or constructive knowledge that the highly predictable consequence of its "no supervision" policy on educator sexual misconduct prevention was that teachers would violate students' constitutional rights to bodily integrity.

The answer to that inquiry is "YES" when looking at the fact-specific evidence in this case. Kerrville Independent School District's Board of Trustees absolutely should have known continued educator sexual abuse was the highly probable consequence of its "no supervision policy" on teacher sexual misconduct. A reasonable jury looking at the evidence below could certainly find KISD and its "no supervision policy" liable for causing

Jane's constitutional violation.

At the same time KISD was under fire from the public for allowing two of its teachers to sexually abuse students, school boards across the state were being regularly briefed on their obligations for preventing educator sexual misconduct. KISD's Board was one of those boards.

The Texas Legislature passed Senate Bill 7 during the 2017 regular legislative session and the new laws related educator sexual misconduct took effect in September 2017. See ROA.5414-5557. Before the SB7 passed, Assistant Superintendent Ivy presented a PowerPoint presentation about its educator sexual misconduct provisions. ROA.5976-5992. After the bill passed, Ivy updated the Board again on those changes in a lengthy memorandum on December 8, 2017. ROA.5414-5557. Ten days later, Ivy gave a Power Point presentation on the new laws to the Board. ROA.5921-5943.

KISD's own expert, Dr. Thompson, confirmed that "KISD should have been on high alert to watch after Jane Doe being vulnerable to recurrence of sexual abuse after discovering what Edwards,

Edwards, did to her." ROA.4388. Dr. Shakeshaft, the leading expert in educator sexual misconduct, provided the jury with a list of red flags that told KISD it had a failure in its policies (or a missing policy). ROA.4164-4168, ROA.4173-4174, ROA.4386-4387.

KISD did not change its "no supervision policy." ROA.4318-4319. The Board saw KISD's letters to the SBEC summarizing the information gathered while investigating both educators. ROA.4315. That information revealed how KISD's "no supervision policy" enabled both teachers to abuse their victims. No supervision changes were made and the ongoing duty to supervise was ignore. ROA.4318-4319. KISD threw some training at the wall instead.

Superintendent Foust admitted training was the only action KISD took to fix the holes in supervision and policy on preventing educator sexual misconduct. ROA.4329-4330. Dr. Foust also confirmed that KISD's Board did not engage in any supervision related to preventing educator sexual misconduct at the schools in its district after its educator sexual abuse problem went public in September 2017:

Q. So they don't really manage the implementation of their policies, is that what you are saying?

A. I think that's the role of their leadership team or the administrative team in the district.

Q. And they choose not to supervise the implementation of their policies, do they?

A. I wouldn't say they "choose not to." I would say that they -- I would say no to that. I don't think it's their choosing not to.

Q. Let me ask it this way. They don't supervise the implementation of their policies?

A. They don't manage the day-to-day operations at the district.

Q. That's not my question. They don't supervise the implementation of their policies?

MS. PAYNE: Objection. Asked and answered.

THE COURT: You can answer.

THE WITNESS: They govern the policies of the district.

Q. All right. They govern. And govern is different than supervision to you?

A. I just think it's a more appropriate term.

ROA.4318:5-4319:2.

Two instances of educator sexual abuse from different educators at the same school under the same administration during the same time period is

a noticeable pattern that should not be discounted.

Based on the above evidence, reasonable jurors could conclude: (1) the KISD Board had at least constructive notice in September 2017 that the highly predictable consequence of not supervising school district employees in the prevention of educator sexual misconduct was continued occurrences of educator sexual misconduct that violate students' rights to bodily integrity, and (2) keeping its "no supervision policy" with that knowledge amounted to deliberate indifference.

Jane asks this Court to reverse the district court's order granting judgment as a matter of law on her failure to supervise claim under § 1983.

## III. The JMOL proceedings were fundamentally unfair.

Jane fully briefed the unfairness of the district court's procedures during the JMOL proceedings in her opening brief and adopts that briefing in full. She does, also, however reply to KISD's claim that the record does not show the amount of time the Court gave Jane to read its 29-page motion. It does. *See* ROA.4790 (noting the jury was released at 2:56 pm), ROA.4791-4793 (conversation while court staff are emailed and print copies of the

motion because it had not processed through PACER resulted in the hearing starting after 3 pm), <u>ROA.4793-4828</u> (thirty-five pages of defense argument of the motion), <u>ROA.4848</u> (allowing until 4:15 pm).

This deprived Jane of the opportunity to read the full motion, identify any defects and cure, or prepare a response to the grounds argued in the motion. The court ultimately granted judgment as matter of law on the spot, on all grounds and evidence in the written motion Jane was given an opportunity to read. That exercise of the court's authority to manage its court made the proceeding fundamentally unfair. Jane asks this Court to reverse the court's abuse of its discretion

## CONCLUSION

For these reasons, Appellant Jane Doe asks this Court to reverse the district court's order granting judgment as a matter of law, remand this case for trial on the merits, and for such other relief to which she may be justly entitled.

Respectfully Submitted,

_s/Heather Lynn Long_

Heather Lynn Long
**HEATHER LONG LAW PC**
4310 N Central Expressway
Dallas, Texas 75206
Phone: 214-699-5994
heather@heatherlonglaw.com

Martin Cirkiel
**CIRKIEL LAW GROUP, P.C.**
1901 E Palm Valley Boulevard
Round Rock, Texas 78664
Phone: 512-244-6
marty@cikielaw.com

Amos L. Barton
**THE CARLSON LAW FIRM, P.C**.
301 Junction Highway, Suite 100
Kerrville, Texas 78080
Phone: 830-257-7575
amos@carlsonattorneys.com

**ATTORNEYS FOR APPELLANT
JANE DOE**

## CERTIFICATE OF SERVICE

This certifies that this reply brief was served shortly after midnight on February 19, 2025 to all parties that receive notification through the Court's electronic filing systems.

_s/Heather Lynn Long_
Heather Lynn Long

## CERTIFICATE OF COMPLIANCE

This reply brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 4,302 words. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14 point Palatino Linotype font for the text, including headings, and 12 point Palatino Linotype font for footnotes.

_s/Heather Lynn Long_
Heather Lynn Long